IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 21, 2020 Session

**RICKY LEE JOHNSON v.**
**KNOXVILLE HMA CARDIOLOGY PPM, LLC D/B/A EAST TENNESSEE**
**HEART CONSULTANTS, INC. D/B/A TENNOVA HEART-NORTH ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. 1-6-19     Kristi M. Davis, Judge**

_____

**No. E2019-00818-COA-R3-CV**

_____

In this action involving injuries allegedly caused by the defendant medical providers' failure to provide a safe examination table, the trial court determined that the plaintiff's negligence claim was actually a health care liability claim and granted the defendants' motion to dismiss the complaint with prejudice for failure to provide written pre-suit notice to the defendants within the one-year statute of limitations pursuant to Tennessee Code Annotated § 29-26-121(a) (Supp. 2019) of the Tennessee Health Care Liability Act ("THCLA"). The plaintiff has appealed, conceding that he failed to provide written pre-suit notice but asserting that his claim should not have been dismissed because it was not a health care liability claim. Having determined that the trial court properly found that the plaintiff's claim was a health care liability action, we affirm the dismissal of this matter. However, having also determined that the proper sanction for the plaintiff's failure to provide pre-suit notice under the THCLA was dismissal without prejudice, we modify the trial court's dismissal of the claim to be without prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark E. Brown, Knoxville, Tennessee, for the appellant, Ricky Lee Johnson.

C.J. Gideon, Jr.; C. Blake Carter; and Jed S. Crumbo, Nashville, Tennessee, for the appellees, Knoxville HMA Cardiology PPM, LLC d/b/a East Tennessee Heart Consultants, Inc. d/b/a Tennova Heart-North and Charles B. Treasure, M.D., as an employee/agent and/or Charles B. Treasure, M.D., individually.

**OPINION**

## I. Factual and Procedural Background

The facts underlying this action are essentially undisputed. In 2016, the plaintiff, Ricky Lee Johnson, consulted the co-defendant, Charles B. Treasure, M.D., regarding problems with dizziness and fatigue. Mr. Johnson subsequently had a pacemaker implanted by Dr. Treasure to alleviate some of his symptoms. Mr. Johnson continued to see Dr. Treasure for reprogramming of his pacemaker and other issues. On February 6, 2018, Mr. Johnson was at Dr. Treasure's Knoxville office when he fell off an examination table and into a wall, purportedly due to a fainting spell, resulting in injuries to Mr. Johnson's neck.

Mr. Johnson filed a complaint in the Knox County Circuit Court ("trial court") on January 7, 2019, against Knoxville HMA Cardiology PPM, LLC d/b/a East Tennessee Heart Consultants, Inc. d/b/a Tennova Heart-North, where Dr. Treasure's office was apparently located, and Dr. Treasure as an employee/agent and/or in his individual capacity (collectively, "Defendants"). Mr. Johnson averred that Defendants had failed to provide an examination table with railings to prevent falls or any padding or protection on the walls and floor to prevent injury. He further averred that this failure resulted in his fall and subsequent injuries after he suffered a fainting spell. Mr. Johnson alleged that because Defendants knew that he suffered from fatigue and dizziness, they should have been aware of the risk associated with leaving him unattended on the examination table. Mr. Johnson also alleged that by failing to provide a safe examination room, Defendants created a hazardous condition and breached their duty of care by failing to properly inspect the premises, correct the hazardous condition, and warn Mr. Johnson of the hazardous condition.

Defendants filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6). In support, Defendants asserted that Mr. Johnson's negligence claim was actually a health care liability claim and thus subject to the THCLA, which requires written pre-suit notice to each defendant within a one-year statute of limitations and at least sixty days prior to filing a complaint. *See* Tenn. Code Ann. § 29-26-121(a). Defendants argued that because Mr. Johnson failed to comply with this requirement, the complaint should be dismissed with prejudice. Mr. Johnson filed a response, asserting that his claim was based on a theory of general negligence and did not fall under the THCLA. Defendants filed a reply, reasserting their reasoning for the motion to dismiss.

Following a hearing, the trial court entered an order granting Defendants' motion to dismiss on April 16, 2019. In its order, the trial court reviewed the allegations in the complaint and determined that the complaint asserted a health care liability action as

defined by Tennessee Code Annotated § 29-26-101(a)(1). In addition, the trial court found the complaint's allegations analogous to the plaintiff's allegations in *Osunde v. Delta Med. Ctr.*, wherein this Court held that "the provision of [a] stool in connection with [an] x-ray qualifies as a 'health care service' because such services include 'staffing, custodial or basic care, positioning, hydration and similar patient services.'" 505 S.W.3d 875, 888 (Tenn. Ct. App. 2016) (quoting Tenn. Code Ann. § 29-26-101(b)).

The trial court also concluded in this action that it was reasonable to infer from the allegations in the complaint that Mr. Johnson was on the examination table for the purpose of "evaluation and/or treatment." Noting that Mr. Johnson did not dispute that he had failed to provide written pre-suit notice to either defendant within the one-year statute of limitations, as required by Tennessee Code Annotated § 29-26-121(a), the trial court determined that Mr. Johnson's action should be dismissed with prejudice. Mr. Johnson timely appealed.

## II. Issue Presented

Mr. Johnson presents the following issue on appeal, which we have restated slightly:

> Whether the trial court erred by dismissing Mr. Johnson's complaint with prejudice upon concluding that it was subject to the provisions of the THCLA.

## III. Standard of Review

The trial court granted Defendants' motion to dismiss, which was filed pursuant to Tennessee Rule of Civil Procedure 12.02(6). Our Supreme Court has explained with regard to Rule 12.02(6) motions generally:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005))[.]

3

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*, 71 S.W.3d [691,] 696 [Tenn. 2002])[.] A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (additional internal citations omitted).

Specifically regarding the standard of review applicable to a motion to dismiss a health care liability action based on the plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121 and Tennessee Code Annotated § 29-26-122 (2012), which requires the plaintiff to file a certificate of good faith with the complaint when expert testimony will be required, our Supreme Court has further explained:

The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

Because the trial court's denial of [a defendant's] motion involves a question of law, our review is de novo with no presumption of correctness.

*Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The question of whether [the plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)).

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

The *Myers* Court summarized the principles involved in statutory construction as follows:

> The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind* [*v. Beaman Dodge, Inc.*] 356 S.W.3d [889,] 895 [(Tenn. 2011)].

*Id.* at 308.

5

## IV. Nature of Mr. Johnson's Claim

As his sole issue, Mr. Johnson contends that the trial court was incorrect in determining that the allegations in his complaint set forth a claim that is subject to the provisions of the THCLA. Specifically, Mr. Johnson argues that he did not allege in his complaint that he was receiving medical services at the time of his fall. Defendants contend that the trial court properly found Mr. Johnson's claim to be one under the umbrella of the THCLA. Upon thorough review of the record and applicable authorities, we agree with the trial court and Defendants on this issue.

In its order granting Defendants' motion to dismiss, the trial court stated in pertinent part:

> The Court finds the Complaint's factual allegations assert a health care liability action as defined by the Health Care Liability Act. *See* TENN. CODE ANN. § 29-26-101(a)(1). The Complaint's allegations are essentially the same as the allegations in *Osunde v. Delta Medical Center*, 505 S.W.3d 875 (Tenn. Ct. App. 2016), where the Court of Appeals ruled that the provision of an allegedly unsafe stool to a patient in connection with an x-ray was a "health care service." *See id.* at 888. Here, the Defendants' provision of an allegedly unsafe examination table (and surrounding area) to [Mr. Johnson] for the purpose of evaluation and/or treatment is not distinguishable from *Osunde*. While the Complaint does not explicitly allege [Mr. Johnson] was on the examination table for the purpose of evaluation and/or treatment, that is the only reasonable inference from the allegations in the Complaint.

> Because the Complaint asserts a health care liability action, it is subject to the requirements of the Health Care Liability Act, including written pre-suit notice to all named Defendants. *See* TENN. CODE ANN. § 29-26-121(a). There is no dispute [Mr. Johnson] did not provide written pre-suit notice to either Defendant within the one (1)-year statute of limitations. *See* TENN. CODE ANN. § 29-26-116(a)(1). As a matter of law, the Complaint fails to comply with the Health Care Liability Act, and must be dismissed with prejudice.

We begin our analysis by examining the definitions contained in the THCLA that are pertinent to this action. The THCLA defines a "health care liability action" as:

> any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an

6

injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]

Tenn. Code Ann. § 29-26-101(a)(1) (Supp. 2019). The THCLA defines "health care services" as including:

care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services.

Tenn. Code Ann. § 29-26-101(b) (Supp. 2019).

The THCLA requires in relevant part:

Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1). In addition, "[t]he requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider," the notice is served personally or by mail, "which shall be filed with the complaint." Tenn. Code Ann. § 29-26-121(a)(3).

Regarding what constitutes a health care liability action under these definitions, our Supreme Court has held:

Giving every word in this section its full effect and plain meaning, we hold that section 29-26-101 establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

*Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015). The statutory definition of "health care liability action" is conclusive, and most civil claims arising in the medical setting will fall under the "wide net" of the definition. *Cordell v. Cleveland Tenn. Hosp., LLC,* 544 S.W.3d 331, 336 (Tenn. Ct. App. 2017); *see Osunde*, 505 S.W.3d at 884-85 ("Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions.").

However, "whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." *Cordell*, 544 S.W.3d at 336 (quoting *Osunde*, 505 S.W.3d at 885 n.6) ; *see Estate of Thibodeau v. St. Thomas Hosp.*, No. M2014-02030-COA-R3-CV, 2015 WL 6561223, at *6 (Tenn. Ct. App. Oct. 29, 2015) (explaining that the plain language of the statute is applied to the allegations in the complaint to determine if a claim constitutes a health care liability action). Although "the analytical line" that separates THCLA claims from non-THCLA claims is "sometimes unclear," it is this Court's task to determine on which side of the line Mr. Johnson's claim falls. *See Lacy v. Vanderbilt Univ. Med. Ctr.*, No. M2016-02014-COA-R3-CV, 2017 WL 6273316, at *7 (Tenn. Ct. App. May 4, 2017).

In this case, under a claim labeled "Negligence," Mr. Johnson specifically alleged in his complaint:

> [Mr. Johnson] sues the Defendants for personal injury suffered as a result of his fall from the examination table. Specifically, the Defendants knew that [Mr. Johnson] had suffered from dizziness and fatigue in the past as noted in [Mr. Johnson's] medical records which led—at least in part—to the implantation of a pacemaker. The Defendants were thus aware or should have been aware of the risk associated with [Mr. Johnson's] remaining unattended on an examination table without proper safety protocols. By failing to have railings or other security devices on the examination table the Defendants created a hazardous condition that was not open and obvious and was a breach of the duty of care and the actual and proximate cause of [Mr. Johnson's] injuries.

> [Mr. Johnson] alleges that the Defendants owed a duty of care to inspect the premises at its office for hazardous conditions. [Mr. Johnson] alleges that the Defendants' failure to properly inspect the premises is a breach of the duty of care and the actual and proximate cause of [Mr. Johnson's] injuries.

> [Mr. Johnson] alleges that the Defendants owed a duty of care to him to repair, replace or correct the unsafe and hazardous conditions at its

8

office. [Mr. Johnson] alleges that the Defendants' failure to properly repair, replace or correct the unsafe or hazardous conditions at its office is a breach of the duty of care and the actual and proximate cause of [Mr. Johnson's] injuries.

[Mr. Johnson] alleges that the Defendants owed a duty of care to warn of any unsafe conditions at its office. [Mr. Johnson] alleges that the Defendants' failure to warn [Mr. Johnson] of such unsafe and hazardous conditions is a breach of the duty of care and the actual and proximate cause of [Mr. Johnson's] injuries.

As a result of the fall and injury [Mr. Johnson] has been forced to undergo medical treatment for a broken neck, and damage to an artery in his neck which would have not occurred but-for the breach of duty on behalf of the Defendants.

As a result of the Defendants' negligence, [Mr. Johnson] is entitled to damages in the form of medical expenses, pain and suffering, loss of enjoyment of life and loss of earning capacity.

(Paragraph numbering omitted.)

In determining that Mr. Johnson's claim was subject to THCLA requirements, the trial court found it analogous to the plaintiff's claim in *Osunde*, 505 S.W.3d 875. Mr. Johnson argues that this action is factually distinguishable because unlike the plaintiff in *Osunde*, Mr. Johnson has not alleged that he was receiving medical services at the time of his fall. He therefore asserts that his claim is not subject to the pre-suit notice requirement of the THCLA. Defendants argue that the trial court properly found that Mr. Johnson's allegations mirrored those of the *Osunde* plaintiff. We agree with Defendants.

In *Osunde*, the plaintiff was a patient at the defendant hospital when she was asked to step onto a stool in order to undergo an x-ray. *Osunde*, 505 S.W.3d at 877. After the x-ray was completed, the plaintiff tried to step off the stool and fell, incurring injuries. *Id*. In her complaint, the plaintiff asserted "medical malpractice" and common law negligence.[1] *Id.* at 876. The defendant hospital filed a motion for summary judgment when the plaintiff missed a deadline to disclose experts. *Id.* at 876-77. The trial court dismissed the medical malpractice claim but denied the motion regarding the common

---

[1] We note that "the Tennessee Civil Justice Act of 2011 amended the existing Tennessee Medical Malpractice Act by removing all references to 'medical malpractice' from the Tennessee Code and replacing them with 'health care liability' or 'health care liability action' as applicable." *See Ellithorpe*, 479 S.W.3d at 826 (citing 2011 Pub. Acts, Ch. 510 § 9 (H.B. 2008)).

law negligence claim. *Id.* at 877. On interlocutory appeal, this Court determined that the common law negligence claim was actually a health care liability action, stating:

> Although [the plaintiff's] counsel [has] argued that the facts surrounding this asserted negligence claim do not give rise to a health care liability action, we must respectfully disagree. The asserted conduct on which [the plaintiff] bases her recovery fits within the definition of a health care liability action stated in section 29-26-101. Again, such an action alleges that a health care provider "caused an injury related to the provision of, or failure to provide, health care services." *Id.* Here, [the plaintiff] has alleged that the radiology technician caused an injury to her when he provided her with a faulty stool in connection with an x-ray taken at [the defendant's hospital]. Under the statute, the radiology technician qualifies as a "health care provider" because that term includes the employees of health care providers such as "physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, [and] technicians." *Id.* § 29-26-101(a)(2)(D). Moreover, the provision of the stool in connection with the x-ray qualifies as a "health care service" because such services include "staffing, custodial or basic care, positioning, hydration and similar patient services." *Id.* § 29-26-101(b). Measuring the facts asserted by [the plaintiff] against the backdrop of the definitions contained within the statute, it is inescapable that she has alleged that a "health care provider" has injured her in relation to its provision of "health care services." As such, her action is subject to the THCLA.

*Id.* at 887-88. We determine, as did the trial court, that the provision of the stool in *Osunde* is comparable to the provision of an examination table in the instant action.

Similarly, Defendants posit that Mr. Johnson's claim is comparable to that of the plaintiff in *Youngblood ex rel. Estate of Vaughn v. River Park Hosp., LLC*, No. M2016-02311-COA-R3-CV, 2017 WL 4331042, at *1-4 (Tenn. Ct. App. Sept. 28, 2017). Again, we agree. In *Youngblood*, a nurse employed by the defendant hospital brought the eighty-six-year-old plaintiff a cup of coffee while the plaintiff was recovering from a major surgery. *Id.* at *1. The plaintiff burned himself after the nurse left the room. *Id.* The plaintiff sued the hospital, alleging that given his condition, he should not have been left alone to manage an extremely hot beverage. *Id.* The plaintiff did not provide written pre-suit notice to the defendant hospital as required by the THCLA. *Id.* The trial court determined that "the actions in bringing a cup of coffee to [the plaintiff's] hospital room and leaving it on his bedside table were 'related to the provision of, or failure to provide, health care services.'" *Id.* at *3 (quoting Tenn. Code Ann. § 29-26-101(a)(1)).

We conclude that Mr. Johnson's allegations are "related to the provision of, or failure to provide, health care services" as defined by Tennessee Code Annotated § 29-26-101(a)(1). The provision of an examination table for an appointment with a doctor is a "health care service" as defined by Tennessee Code Annotated § 29-26-101(b) because it falls under "custodial or basic care, positioning . . . and similar patient services." *See Osunde*, 505 S.W.3d at 888 (quoting Tenn. Code Ann. § 29-26-101(b)). Although Mr. Johnson did not specifically allege that he was at Defendants' office to receive medical services at the time of his fall, we agree with the trial court that this is the only reasonable inference to make from the complaint. Despite Mr. Johnson's attempt to base liability on a premises liability theory, if a claim meets the definition, it is a health care liability action "regardless of any other claims, causes of action, or theories of liability alleged in the complaint." *See Ellithorpe*, 479 S.W.3d at 827 (citing Tenn. Code Ann. § 29-26-101).

On appeal, Mr. Johnson also relies on this Court's decision in *Lacy v. Mitchell*, 541 S.W.3d 55 (Tenn. Ct. App. 2016), to argue that it is reasonable to conclude that because Mr. Johnson's medical appointment had ended, his fall was not related to medical services. In *Lacy*, the plaintiff sued for injuries she purportedly sustained when a chiropractor allegedly assaulted her by jumping on her back while she was lying face down on a table and by hitting her on the back with a medical folder as the chiropractor was walking out the door. *Lacy*, 541 S.W.3d at 57-58. The trial court dismissed the action for failure to comply with the THCLA pre-suit notice requirement. *Id.* at 58. This Court, vacating the dismissal in part, determined that Ms. Lacy had two separate cognizable claims, one for the provider's allegedly jumping on her back and another for the provider's allegedly hitting her in the back with a medical folder. *Id.* at 60. Reasoning that it was equally reasonable to infer that the strike on the back with the folder occurred after the chiropractor finished rendering medical services, this Court determined that it was not apparent from the face of the complaint that the second claim fit the definition of a health care liability action. *Id.* at 61.

We find the instant action to be highly factually distinguishable from *Lacy* because allegations of assaulting a patient by striking her on the back with a folder while she was walking out the door are in no way comparable to allegations of a patient's falling off an examination table while in the examination room. Regardless of whether Mr. Johnson's medical appointment had ended, his position on the examination table was "related to the provision of, or failure to provide, health care services." *See* Tenn. Code Ann. § 29-26-101(a)(1). Mr. Johnson's reliance on *Lacy* is unavailing. Assuming that all of the factual allegations in Mr. Johnson's complaint are true, as we must in considering a motion to dismiss, *see Webb*, 346 S.W.3d at 426, we conclude that Mr. Johnson has pled a health

care liability claim subject to the requirements of the THCLA.  *See* Tenn. Code Ann. § 29-26-101(a)(1).

We now address the consequences of Mr. Johnson's failure to give Defendants pre-suit notice as required by Tennessee Code Annotated § 29-26-121(a)(1).  Our Supreme Court held in *Foster v. Chiles* that "dismissal without prejudice is the proper sanction for noncompliance with Tenn. Code Ann. § 29-26-121(a)(1)."  467 S.W.3d 911, 916 (Tenn. 2015) (footnote omitted); *see Ellithorpe*, 479 S.W.3d at 828 ("This Court has interpreted the disparity between sections 29-26-121 and -122 as indicative of the Legislature's intent that failure to provide pre-suit notice result only in dismissal *without prejudice*." (citing *Foster*, 467 S.W.3d at 916)).  In this case, Mr. Johnson concedes that he has failed to give Defendants pre-suit notice as required by Tennessee Code Annotated § 29-26-121(a)(1).  We therefore modify the trial court's dismissal of this action to be without prejudice.[2]

## V.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing Mr. Johnson's claim.  We modify the trial court's judgment, however, to be a dismissal without prejudice.  We remand for enforcement of the judgment and collection of costs below.  Costs on appeal are taxed to the appellant, Ricky Lee Johnson.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] We note that the written pre-suit notice requirement of Tennessee Code Annotated § 29-26-121(a)(1) must be served within the one-year statute of limitations as required by Tennessee Code Annotated § 29-26-121(a)(3).  In this case, the one-year statute of limitations expired in February 2019.  *See* Tenn. Code Ann. § 29-26-116(a)(1) (2012).  We therefore acknowledge that although we are directing Mr. Johnson's claim to be dismissed without prejudice, any further claims by Mr. Johnson will be time-barred.  See *Givens v. Vanderbilt Univ.*, No. M2013-00266-COA-R3-CV, 2014 WL 820622 at *6 (Tenn. Ct. App. Feb. 27, 2014) (affirming the dismissal of the plaintiff's claim without prejudice but acknowledging that any further claims would be time-barred).